FILED
JUL 16 2009
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern D...

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
(BECKLEY DIVISION)

PIERRE LAHENS
    Plaintiff,

5:09-0812

v.

DAVID BERKEBILE, Warden,
F.C.I.-Beckley, et al.,
    Defendants.

## MOTION FOR CIVIL ACTION COMPLAINT

Now Comes, the plaintiff, Pierre Lahens pro se, and without the assistance of counsel, in the above-entitled matter, and respectfully urges this Honorable Court in the interest of justice pursuant to 42 United States Code section 1983.

In support of this request, the plaintiff respectfully refers this Court pursuant to 28 United States Code section 1746 set forth that he declare under penalty of perjury that the foregoing statements in this preceding are true and correct, and further states:

During, or before, February, 2009, the plaintiff was move/

out of the Psychology Service called the Brave Program in Oak A Lower unit, to move to Pine B Lower unit where he was originally assigned to. Plaintiff was assigned to cell 208 with two other cellmates. One of the cellmate name McIntosh did not want the plaintiff in the cell, based on racist discrimination. This Institution have a policy that an African American cannot be cellmates with a Caucasian, also an African American cannot be cellmates with a Hispanics, but a Caucasian can be cellmates with a Hispanics only if both leaders of their members commonly know as the shot caller comes to an agreement. Sorry, but the plaintiff was not raised in that type of matter, and this was very shocking. Along with this racist discrimination, inmate McIntosh made several attempts to remove the plaintiff out of the cell by addressing this issue to Case Manager Fowler and Correctional Counselor Painter, and his mission was not accomplished. To resolve this racial altercation, the plaintiff expedited for a new cell, even inmate the plaintiff came in connection with in the unit they all would said the samething, that they already have a cellmate and they are not trying to have three cellmates in one cell. The Plaintiff's other cellmate moved out for the same reason stated above. Inmate McIntosh decided to place one of his member he knows from the outside world in the cell as a threating matter. On March 16, 2009, early in the morning, while the plaintiff still sleeping. Inmate McIntosh comes storming in the cell, while his members was 15 feet away from the cell being a look out, and verbally threating the Plaintiff, that he better move out of the cell today, and if he does not move out today his going to hit

him with a sock & lock, which means placing a combination lock into a pair of socks. The plaintiff get out of the bed and folds the sheets and blanket, then stated he's not moving out until he finds another cell. Inmate McIntosh pushs and strucked the plaintiff with his close fist. The plaintiff had no choice, but to defend or protect himself, not to mention, there was no Unit Officer to direct responsibility for the daily supervision of inmates and to enforce rules and regulations, so no staff was there to provide safety and security. After being attacked, inmate McIntosh's members started threatiny the plaintiff to keep his mouth close or else. Hours later, the plaintiff was called to the Lieutenant's Office upon the interrogation, the plaintiff was questioned about the incident that happen in the morning, and he did not want to be labeled as rat or a snitch, because if other inmates finds out then the plaintiff will be at harm or be forced to go to protective custody. Captain Nash came barging in the office immediately threaten the plaintiff verbally by saying that he's going to throw him in confinement for untold period of time, if he do not tell him what happened to inmate McIntosh. Since, the plaintiff did not tell him, he then tried to intimidate the plaintiff by stating that he's going to make sure he send him to a United States Penitentiary, because he could do what he wants. The plaintiff was then placed in administrative segregation by Captain Nash which resulted being locked down 24 hours, 7 days a week restricted of his liberty of movement, and initiated a campaign of harassment against the plaintiff. The plaintiff received a disciplinary referral from the investigator Lieutenant Pritt and this investigator failed to do a thorough investigation. The investigator did not even questioned the Unit Officer, inmates in

the unit, or most importantly did not secured the cameras in the unit which would of shown that the plaintiff was in danger with his cellmate and his members. Instead, he neglected to pursue further investigation to determine whether the plaintiff was entitled to reasonable protection from harm at the hands of fellow inmates. Lieutenant Pritt reports that inmate McIntosh was brought to his office with noticeable injuries. To cover up for inmate McIntosh Lieutenant Pritt alleged that inmate McIntosh told him that his injuries were caused by fighting with the plaintiff, who is black. Upon this racist statement on the Incident Report, The Disciplina Hearing Office Kilgore find the plaintiff committed the prohibited act of fight with another person, code 201, while incarcerated at this Institution, on March 18, 2009, at about 6:30 a.m., in Pine B Lower unit, cell 208, when the plaintiff and his assigned cell mate who initiated the conflict and attacked the plaintiff with a closed fist. The relavance of such an explanation to the D.H.O should have been obvious to investigator. After Disciplinary Hearing Office Kilgore sanction the plaintiff to 30 days disciplinary segregation with disallowed 27 days Good Conduct Time (GCT) from olo-PLRA, the plaintiff finds out through his Unit Correctional Counselor Painter that inmate McIntosh was not even sanction of the same prohibit act. Disciplinary Hearing Office Kilgore took the action necessary and prevented an imbalance in favor of inmate McIntosh, because he was racially bias against the plaintiff and the case. The plaintiff was clearly prejudice by the inclusion of the erroneous information. The plantiff was informing this imbalance favor issue to the SIS investigator, out of nowhere Captain Nash hurried down to the

conversation that he heard the plaintiff and SIS investigator was having and started yelling in the Special Housing Unit hallway that he could do what he wants in this Institution and his staff members does not have to explain why the plaintiff was the only one sancti for the code 201. After terminating confinement in disciplinary segregat the plaintiff was then placed in administrative detention until further notice with a new assigned cellmate. Without delay, there was a serious threat exist to the plaintiff's safety as perceived by staff, although the plaintiff had complied with the Institution's rules and regulations, by filling out BP-S148.55 form (cop-out) to the Special Housing Unit Officals, letting them know that there are irreconciable differences between the plaintiff and his new cellmate over the proper management of the cell. As a result of the plaintiff being a Seventh-Day Adventist Christian and his cellmate was a believer in Islam (Muslim), the allegations contained in the plaintiff's BP-S148.55 form that there now exist a conflict of interest between the plaintiff and his cellmate such that the Special Housing Unit Offical should appoint separate cells for the both them. The Special Housing Unit Officals unethica conduct totally disgarded known risk of the plaintiff's safety again. On May 1, 2009, Correctional Officer James was escorting his cellmate from recreation to the cell. Correctional Officer James placed hand restraints on the plaintiff without double locking the restraints. He opened the cell door and the plaintiff walked out of the cell then placed himself against the nearest wall. He specifically explained to Correctional Officers James & Tolliver that his life was in danger with his cellmate and did not wanted unnecessary problems. The Correcti

Officers inclined their ears, but made their neck stiff, that they might not hear, and tried to throw him back in the cell, while the plaintiff struggled not to go back in the cell. They decided to sla the plaintiff on the floor leaving abrasion to the plaintiff's wrist. Leg irons was placed on the plaintiff so tightly that PA-C Shrewsbury did an examination, seen that the plaintiff was not getting any circulation, being that the plaintiff is "diabetic", and order the Special Housing Unit Lieutenant Clark to loose the leg irons and the hand restraints and to make sure its double locked for safety. The plaintiff received a disciplinary referral that was a false statement made with intent to deceive alleging that the plaintiff assaultin Correctional Officer James. Here, the prison officals used excessive force on him, abused their administrative authority, intiated a campaign of harassment against him, and lied under their Bureau of Prison oath all in an extended effort to belittle his character It is respectfully submitted that in this case, the plaintiff has presented his issues of concern informally to staff. In addition, staff has not attempt to informally resolve the issue. Ever since the plaintiff attempted to exhaust his available administrative remedies before filing this motion, the Institution staff are denying and refusing to respond to his grievance. Similarly, the plaintiff is not obtaining the appropriate form from CCC staff or Institution staff (ordinarily, the Correctional Counselor), because the plaintiff do not see the Correctional Counselor daily or regularly, which is causing him to be procedurally barred as untimely.

Under this reasoning, if the Court finds that the plaintiff

demonstrates an acceptable reason for bypassing the administrative remedies, then the plaintiff respectfully urges this Honorable Court to grant this motion and affidavit in support of motion in the interest of justice, and pursuant to all of applicable laws.

Dated:

July 14, 2009

Respectfully submitted

Pierre Lahens
Pierre Lahens, pro se
Reg No.: 72885-004
F.C.I.-Beckley
P.O. Box 350
Beaver, West Virginia 258

Pierre Laheins, Pro se
Register No.: 72885-004
Federal Correctional Institution, Beckley
Post Office Box 350
Beaver, West Virginia 25813

"Legal Correspondence"
18 U.S.C. Section 1701, 1703
Invoke for interference with
this mail is a felony Offense
B.O.P.: Please Process As Legal Correspondence

United States District Court
United States Bankruptcy Court
Southern District of West Virginia
P.O. Drawer 5009
Beckley, West Virginia 25801

"Legal Correspondence"

FEDERAL CORRECTIONAL INSTITUTION
BECKLEY
PO BOX 1280
BEAVER, WV 25813

DATE 7/13/09

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING PROCEDURES FOR FORWARDING TO YOU. THE LETTER HAS BEEN NEITHER OPENED NOR INSPECTED. IF THE WRITER RAISES A QUESTION OR PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MATERIAL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSES CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.